United States Court of Appeals,

Fifth Circuit.

No. 95-10873.

Greg and Paige EASTUS, Plaintiffs-Appellees,

v.

BLUE BELL CREAMERIES, L.P., Defendant-Appellant.

Oct. 15, 1996.

Appeal from the United States District Court for the Northern District of Texas.

Before WISDOM, SMITH and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Blue Bell Creameries, L.P. ("Blue Bell"), appeals the remand of two state law claims under 28 U.S.C. § 1441(c). Concluding that the statute does not authorize remand of one of these claims, we reverse as to that claim, affirm as to the other, and remand.

I.

Greg Eastus worked for Blue Bell for over ten years, mostly as a route salesman. On July 12, 1994, Eastus asked for time off because he expected his wife, Paige Eastus, to give birth. According to Greg Eastus, his immediate supervisor told him two days later that the branch manager had threatened to fire him if he took the time off. This "resulted" in Eastus's termination on August 5.[1] Eastus complains that this was a violation of section 105 of the Family and Medical Leave Act ("FMLA"). *See* 29 U.S.C. § 2615(b).

Eastus further complains that Blue Bell knew at that time that he was under considerable stress and that his wife was pregnant and overdue, and thus firing him exceeded "all possible bounds of decency." Consequently, Greg and Paige Eastus sue for intentional infliction of emotional distress under Texas law.

---

[1] Eastus's complaint is vague about how this happened. It appears that he took time off despite this threat, got into an argument with his supervisors when he returned to work on August 1, and was fired on August 5.

Greg Eastus further alleges that, when he was interviewing for other jobs, Blue Bell falsely told his potential employers that he was hard to work with and disloyal. Eastus asserts that Blue Bell did so in retaliation for complaints he made on August 1, the day he returned from his vacation, to senior management about the condition of his truck and equipment. Eastus alleges that this was tortious interference with prospective contractual relations under Texas law. Blue Bell denies all of these allegations and asserts that Eastus was a troublesome employee who was fired for insubordination and for making profane statements to his supervisors and managers.

The Eastuses filed a civil action against Blue Bell in Texas state court for the FMLA violation, tortious interference with prospective contractual relations, and intentional infliction of emotional distress. Blue Bell filed an answer and then removed the case to federal court on the ground that it raised a federal question. *See* 28 U.S.C. § 1331.

The Eastuses then moved for remand on the ground that FMLA cases are not removable and that the state law claims predominate and are "separate and independent" from the federal question. The district court held that FMLA cases are removable[2] but remanded the two state law claims under 28 U.S.C. § 1441(c).

II.

Title 28 U.S.C. § 1447(d) states that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," and thus appears to prohibit the review of the remand order in the instant case. Section 1447(d) is interpreted *in pari materia* with § 1447(c), however, and thus bars only the review of remand orders issued pursuant to § 1447(c).[3] Section 1447(c) allows remand only for (1) defects in removal procedure or (2) lack of subject matter jurisdiction. In the instant case, the remand order was based on the district court's discretionary

---

[2]Eastus does not challenge that ruling in this proceeding.

[3]See *Quackenbush v. Allstate Ins. Co.,* --- U.S. ----, ----, 116 S.Ct. 1712, 1718, 135 L.Ed.2d 1 (1996); *Things Remembered, Inc. v. Petrarca,* --- U.S. ----, ----, 116 S.Ct. 494, 497, 133 L.Ed.2d 461 (1995); *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 345-46, 96 S.Ct. 584, 590-91, 46 L.Ed.2d 542 (1976).

power under § 1441(c) to remand separate and independent state law claims, and not under § 1447(c). Consequently, § 1447(d) does not bar review.

Generally, a district court order is final and appealable under 28 U.S.C. § 1291 only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Certain collateral orders are reviewable immediately under § 1291 when they (1) conclusively determine the disputed question; (2) resolve an issue that is completely separate from the merits of the action; and (3) would be effectively unreviewable on appeal from a final judgement. *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 545-47, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949). In *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court held that the collateral order rule extends to an order staying a federal diversity action until the conclusion of a state action.

Citing *Moses H. Cone,* we applied the collateral order rule to remand orders in *McDermott Int'l, Inc. v. Lloyds Underwriters,* 944 F.2d 1199 (5th Cir.1991). There, we held that remand orders based on statute, contractual provision, or discretion to dismiss may be reviewed directly. *See id.* at 1204. Later, we specifically held that the court could review remand orders made pursuant to the district court's discretion not to entertain pendent state claims. *See Burks v. Amerada Hess Corp.,* 8 F.3d 301, 303-04 (5th Cir.1993).

*Quackenbush* confirms our line of cases. There, the Court held that a remand order based on *Burford* abstention was reviewable on direct appeal under the collateral order doctrine. The Court based this judgment on the grounds (1) that the remand order "puts the litigants ... effectively out of court," --- U.S. at ----, 116 S.Ct. at 1719 (internal quotation marks omitted); (2) that it conclusively determines an issue separate from the merits—whether jurisdiction will be exercised; (3) that the interests asserted on appeal are important; and (4) that the order otherwise could not be effectively reviewed. *See id.* at ---- - ----, 116 S.Ct. at 1719-20.

The remand order in the instant case was made pursuant to § 1441(c), which allows the

3

district court to remand independent and separate, predominantly state law matters joined with federal questions. This order meets the *Quackenbush* criteria: (1) It put the litigants out of court; (2) it conclusively determined whether jurisdiction would be exercised; (3) the interests asserted by Blue Bell—its right to have federal questions litigated in federal court—are important; and (4) the order cannot be reviewed if the state court is allowed to continue hearing the case. Furthermore, the order is almost identical to the order in *Burks.* Therefore, we have jurisdiction over this appeal under the collateral order doctrine.

## III.

### A.

The main issue in this appeal is whether the district court abused its discretion in remanding the two state law claims. *See Hook v. Morrison Milling Co.,* 38 F.3d 776, 780 (5th Cir.1994). The question whether § 1441(c) gave the court the legal authority to remand at all is a question of law that we review *de novo. See Buchner v. FDIC,* 981 F.2d 816, 820 (5th Cir.1993).

The claims were remanded under 28 U.S.C. § 1441(c), which states:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

Thus, for the remand order to be proper, the claim remanded must be (1) a separate and independent claim or cause of action; (2) joined with a federal question; (3) otherwise non-removable; and (4) a matter in which state law predominates.

The second and third requirements are not in dispute: The FMLA claim is a federal question, and because there is no diversity in this case, the state law claims were not removable by themselves. Blue Bell, however, disputes the first and fourth contention.

### B.

The meaning of "separate and independent claim or cause of action" is addressed in *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). There, the plaintiff was

4

unsure as to who had insured him, so he sued three possible insurers. The Court held that the claims against each insurer were not separate and independent, because "there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions...." *Id.* at 14, 71 S.Ct. at 540. The single wrong was the failure to pay insurance; the plaintiff could not recover more than once. The test, therefore, for separateness is the separateness of the wrong to the plaintiff.

This provision requires independence as well as separateness. We have held that a claim is not independent if it "involve[s] "substantially the same facts.' " *Addison v. Gulf Coast Contracting Servs.,* 744 F.2d 494, 500 (5th Cir.1984) (quoting *American Fire,* 341 U.S. at 16, 71 S.Ct. at 541). For example, if one claim depends on establishing liability under the other, the two cannot be found to be independent. *See Moore v. United Servs. Auto. Ass'n,* 819 F.2d 101, 104 (5th Cir.1987) (holding that a negligence claim against an insured and a bad faith claim against the insurer are not separate, as the first must be proved to prevail on the second). In making all determinations of separateness and independence, the complaint controls. *See Finn,* 341 U.S. at 14, 71 S.Ct. at 540; *Moore,* 819 F.2d at 103.

C.

Although we have not squarely considered the "separate and independent" test in the context of employment discharge, *see Burden v. General Dynamics Corp.,* 60 F.3d 213, 221 n. 42 (5th Cir.1995) (not reaching this issue), a district court in this circuit has done so in *Nabors v. City of Arlington,* 688 F.Supp. 1165 (E.D.Tex.1988). There, a police officer alleged that his termination from employment constituted a retaliatory discharge, a breach of contract, and a civil rights violation. The court held that the discharge was the single wrong to the plaintiff, and the various claims were merely different theories of recovery for the same wrong. *See id.* at 1167. Thus, the claims were not separate and independent.

In the instant case, this reasoning applies to the plaintiffs' claims. The FMLA claim alleges that Blue Bell wrongfully fired Eastus in retaliation for taking family leave. The intentional infliction of emotional distress claim also is based on the discharge. The complaint alleges that the "outrageous

5

nature of [the] *discharge*" caused severe emotional distress and that the "*discharge* ... was outrageous in character ... as to go beyond all possible bounds of decency...." (Emphasis added.) It also alleges that Blue Bell "acted with spite, malice or retaliation in *discharging* [Eastus]." (Emphasis added.)

The intentional infliction of emotional distress claim is based on Eastus's termination. The relationship of the FMLA and emotional distress claims, therefore, is similar to the relationship between the claims in the *Nabors* case. For both claims in the instant case, the single wrong is the termination, and the various claims are simply different theories of recovery.

As a result, the FMLA claim and the intentional infliction of emotional distress claim are not "separate and independent claim[s] or cause[s] of action" under § 1441(c). Because § 1441(c) does not authorize the remand of state law claims uhe district court abused its discretion by remanding this claim. *See John G. & Marie Stella Kenedy Memorial Found. v. Mauro,* 21 F.3d 667, 674 (5th Cir.) (holding that § 1441(c) does not allow the remand of claims that are not separate and independent), *cert. denied,* --- U.S. ----, 115 S.Ct. 577, 130 L.Ed.2d 493 (1994).

IV.

The tortious interference with prospective contractual relations claim, on the other hand, bears little relationship to the FMLA claim. The plaintiffs allege that Blue Bell made false statements about Greg Eastus after he was fired, with the purpose and effect of preventing him from finding new employment. For this count, the wrong that Eastus suffered was failure to obtain new employment, not the earlier discharge. Firing someone and preventing him from finding a new job are very different wrongs. The first usually does not lead to the second, and, in fact, it would have been possible for Blue Bell to make false statements about Eastus and prevent him from finding employment even if he still were employed by Blue Bell yet seeking a better situation.[4]

---

[4]Blue Bell asserts that the "tortious interference of prospective contract claim could not even exist apart from the federal FMLA claim," because Eastus would not have been forced to look for new work unless he had been terminated. This is wrong factually, as Eastus could have sought new employment even without being fired. Furthermore, by this logic, anything that happens during any job Eastus may have in the future is linked to the FMLA claim, because he would not have had that new job absent the termination. This logic is overreaching.

6

Furthermore, proof of the two counts will not involve "substantially the same facts." Eastus must show malice on the part of Blue Bell to show tortious interference with prospective contractual relationship, *see Verkin v. Melroy,* 699 F.2d 729, 733 (5th Cir.1983), but Eastus does not claim in his complaint that retaliation for the family leave request was the motive for Blue Bell's actions, or even evidence of its malice. Rather, Eastus asserts that Blue Bell made false statements about him in retaliation for his complaints about the condition of his truck and equipment when he returned from vacation. This motive is only very tenuously related to the FMLA claim and will not involve the same facts. Therefore, the FMLA and tortious interference claims are separate and independent under § 1441(c).

V.

This does not end the inquiry about the propriety of the remand, however, because the fourth requirement for proper remand under § 1441(c) is that any items remanded be "matters in which State law predominates." At first glance, it would seem indisputable that a state law claim for tortious interference of prospective contractual relations is predominated by state law; in fact, it is solely state law. Blue Bell, however, argues that § 1441(c) allows remand only when state law predominates as to the entire case.

Before the 1990 amendments, § 1441(c) allowed the district court to "remand all matters not otherwise within its original jurisdiction." Thus, the court had the discretion to remand any state law claims that were separate and independent from the federal cause of action.

The new version allows remand of "all matters in which State law predominates." Courts that have considered the meaning of the new § 1441(c) have decided overwhelmingly that the provision now permits them to remand the entire action, federal claims and all, if the state law claims predominate.[5]

---

[5]*See Lang v. American Elec. Power Co.,* 785 F.Supp. 1331, 1334 (N.D.Ind.1992); *Moralez v. Meat Cutters Local 539,* 778 F.Supp. 368, 370 (E.D.Mich.1991); *Alexander v. Goldome Credit Corp.,* 772 F.Supp. 1217, 1223-24 (M.D.Ala.1991); *Moore v. DeBiase,* 766 F.Supp. 1311, 1321 (D.N.J.1991); *Holland v. World Omni Leasing, Inc.,* 764 F.Supp. 1442, 1444 (N.D.Ala.1991); *Martin v. Drummond Coal Co.,* 756 F.Supp. 524, 526 (N.D.Ala.1991).

Blue Bell appears to argue that, because district courts now have the power to remand the entire action, they no longer have the power to remand specific causes of action. A leading treatise lends some support to this construction, stating that "the remand provision ... no longer expressly gives the district court plenary discretion to remand those claims that absent joinder would have been nonremovable." 14A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3724, at 167 (2d ed. Supp.1996). This construction gives the words "in which State law predominates" more meaning, as otherwise they are largely superfluous; almost all nonremovable separate and independent claims or causes of action will be predominated by state law. The exceptions are state law claims with federal defenses and federal law claims that expressly are unremovable, such as the actions listed in 28 U.S.C. § 1445.

Nonetheless, we reject this proposed construction of the new § 1441(c). First, the provision is not superfluous if it is understood to give district courts the power to remand the entire case if state law predominates.

Second, this construction opposes the plain meaning of the statute. Section 1441(c) states that "the district court ... may remand all matters in which State law predominates." Blue Bell's construction depends on the statute's actually meaning "all matters *if* State law predominates." Alternately, Blue Bell's construction follows if "matters" refers only to an entire action. However, the word "matters" in the old statute referred to particular causes of action, and that word was not disturbed by Congress.

Third, it was Congress's intent to restrict, rather than to expand, removal jurisdiction in amending § 1441(c). *See Alexander,* 772 F.Supp. at 1225; *Martin,* 756 F.Supp. at 526. Finally, removal statutes are to be construed strictly against removal and for remand. *See Shamrock Oil -09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); Jefferson Parish Hosp. Dist. No. 2 v. Harvey,* 788 F.Supp. 282, 283-84 (E.D.La.1992) (citing *Shamrock,* 313 U.S. at 108-09, 61 S.Ct. at 872).

For these reasons, we hold that § 1441(c) still allows the district court to remand separate and independent state claims, if state law predominates as to the individual claim. Therefore, §

8

1441(c) authorized the district court to remand the tortious interference claim.

## VI.

Blue Bell attacks the district court's ruling only on its decision that § 1441(c) was applicable and allowed remand. It does not allege any other reason why the court may have abused its discretion. Thus, Blue Bell has waived any further objection to the exercise of discretion. *See Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

As we find that § 1441(c) authorized remand of the tortious interference claim, we affirm that portion of the order. As we find that § 1441(c) did not authorize remand of the intentional infliction claim, we reverse that portion of the order.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.